# GUARANTY AGREEMENT

THIS **GUARANTY AGREEMENT** (this "**Guaranty Agreement**") is executed as of November 2, 2016, by **SUNEET SINGAL** (together with such Person's heirs, executors, personal representatives, permitted successors and permitted assigns, being hereinafter referred to individually as a "**Guarantor**" and collectively as the "**Guarantors**"), in favor of **HEARTLAND BANK,** an Arkansas state bank (together with its successors and assigns, any subsequent holder(s) of the Loans being hereinafter referred to as "**Lender**").

## INTRODUCTORY PROVISIONS:

A.   Guarantor is the sole member of First Capital Real Estate Investments, LLC ("**FCREI**") and the beneficial owner of a direct or indirect interest in Borrowers (as defined below), and the value of the consideration and benefit received and to be received by Guarantor, directly or indirectly, as a result of Lender's extension of credit to Borrowers is a substantial and direct benefit to Guarantor.

B.   On or about December 30, 2015, Lender made certain loans (the "**Loans**") to the following subsidiaries of FCREI: to First Capital Victoria, LLC a loan in the amount of $4,394,227.15, to First Capital Hobbs, LLC a loan in the amount of $5,897,626.36 and to First Capital Jourdanton, LLC a loan in the amount of $5,038,500.00 (First Capital Victoria, LLC, First Capital Hobbs, LLC and First Capital Jourdanton, LLC herein referred to individually as a "**Borrower**" and collectively as the "**Borrowers**");

C.   Grantor is entering into this Guaranty Agreement in order to, among other things, to provide additional security for the Loans.

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, each Guarantor hereby guarantees to Lender the prompt payment and performance of the Guaranteed Obligations, this Guaranty Agreement being upon the following terms and conditions:

1.   **Definitions**. Any capitalized term used in this Guaranty Agreement and not otherwise defined herein shall have the meaning ascribed to such term in that certain Credit Agreement (Term Loan) dated December 30, 2015 by and between each Borrower and Lender regarding its respective Loan (each a "**Credit Agreement**" and together with all other notes, security agreements, mortgages deeds of trust and other agreements, certificates and instruments relating to the Loans, the "**Loan Documents**"). In addition, the following terms have the following meanings:

"***Borrowers***" has the meaning set forth in the Introductory Provisions above, and without limitation, Borrowers' successors and assigns (regardless of whether such successor or assign is formed by or results from any merger, consolidation, conversion, sale or transfer of assets, reorganization, or otherwise) including Borrowers as a debtor-in-possession, and any receiver, trustee, liquidator, conservator, custodian, or similar party hereafter appointed for Borrowers or all or substantially all of its assets pursuant to any liquidation, conservatorship, bankruptcy, moratorium, rearrangement, receivership, insolvency, reorganization, or similar Debtor Relief Laws from time to time in effect.

**GUARANTY AGREEMENT** (*Suneet Singal*)

EXHIBIT 26

"*Dispute*" means any action, dispute, claim or controversy of any kind, whether in contract or tort, statutory or common law, legal or equitable, now existing or hereafter arising under or in connection with, or in any way pertaining to, this Guaranty Agreement and each other document, contract and instrument required hereby or now or hereafter delivered to Lender in connection herewith, or any past, present or future extensions of credit and other activities, transactions or obligations of any kind related directly or indirectly to any of the foregoing documents, including, without limitation, any of the foregoing arising in connection with the exercise of any self-help, ancillary or other remedies pursuant to any of the foregoing documents.

"*Guaranteed Indebtedness*" means all (a) "*Obligations*", as defined in the Credit Agreement, including, without limitation, any and all pre- and post-maturity interest thereon (including post-petition interest and expenses (including attorneys' fees), if Borrower is the debtor in a bankruptcy proceeding under the Debtor Relief Laws, whether or not allowed under any Debtor Relief Law), (b) obligations of Borrowers to Lender under any documents evidencing, securing, governing and/or pertaining to all or any part of the indebtedness described in *clause (a)* above, (c) costs and expenses incurred by Lender in connection with the collection and administration of all or any part of the indebtedness and obligations described in *(a)* and *(b)* above or the protection or preservation of, or realization upon, the collateral securing all or any part of such indebtedness and obligations, including, without limitation, all reasonable attorneys' fees, and (d) renewals, extensions, modifications and rearrangements of the indebtedness and obligations described in *(a)*, *(b)* and *(c)* above.

"*Guaranteed Obligations*" means the Guaranteed Indebtedness and the Guaranteed Performance Obligations.

"*Guaranteed Performance Obligations*" means all of the obligations of Borrowers and Guarantors under the Loan Documents other than an obligation to pay money.

2.  **Payment**.  Each Guarantor hereby unconditionally and irrevocably guarantees to Lender, as a guaranty of payment and not merely as a guaranty of collection, prompt payment when due, whether at stated maturity, by required prepayment, by lapse of time, by acceleration of maturity, demand or otherwise, and at all times thereafter, of the Guaranteed Indebtedness. This Guaranty Agreement covers the Guaranteed Indebtedness, whether presently outstanding or arising subsequent to the date hereof, including all amounts advanced by Lender in stages or installments. The guaranty of Guarantors as set forth in this *Section 2* is a continuing guaranty of payment and not a guaranty of collection. Each Guarantor acknowledges and agrees that Guarantors may be required to pay and perform the Guaranteed Indebtedness in full without assistance or support from Borrowers or any other party. Each Guarantor agrees that if all or any part of the Guaranteed Indebtedness shall not be punctually paid when due, whether on the scheduled payment date, by lapse of time, by acceleration of maturity or otherwise, Guarantors shall immediately upon demand by Lender, pay the amount due on the Guaranteed Indebtedness to Lender at Lender's address as set forth in the Credit Agreement. Any such demand may be made at any time coincident with or after the time for payment of all or part of the Guaranteed Indebtedness, and may be made from time to time with respect to the same or different items of Guaranteed Indebtedness. Any such demand shall be made, given and received in accordance with the notice provisions in *Section 21* hereof.

3.   **Performance**.   Each Guarantor hereby unconditionally and irrevocably guarantees to Lender the timely performance of the Guaranteed Performance Obligations, and not merely as a guaranty of collection. The obligations and liability of Guarantors under this *Section 3* shall not be limited or restricted by the existence of, or any terms of, the guaranty of payment under *Section 2* of this Guaranty Agreement; provided it is understood and agreed that the aggregate limitation on liability set forth in *Section 1 and Section 2* shall apply to obligations and liabilities under *Sections 2* and *3* (as well as to any other obligations and liabilities under this Guaranty Agreement).

4.   **Primary Liability of Guarantors**.

(a)   This Guaranty Agreement is an absolute, irrevocable and unconditional guaranty of payment and performance. Each Guarantor is and shall be liable for the payment and performance of the Guaranteed Obligations, as set forth in this Guaranty Agreement, as a primary obligor.

(b)   In the event of default in payment or performance of the Guaranteed Obligations, or any part thereof, when such Guaranteed Obligations become due, whether by its terms, by acceleration, or otherwise, Guarantors shall, immediately upon demand by Lender pay the amount due thereon to Lender without further notice or demand of any kind or nature, in lawful money of the United States of America or perform the obligations to be performed hereunder, and it shall not be necessary for Lender in order to enforce such payment and performance by any Guarantor first, or contemporaneously, to institute suit or exhaust remedies against Borrowers or any other Person liable on the Guaranteed Obligations, or to enforce any rights, remedies, powers, privileges or benefits of Lender against any collateral or any other security or collateral which shall ever have been given to secure the Guaranteed Obligations.

(c)   Suit may be brought or demand may be made against Guarantor or any other guaranty in favor of Lender covering all or any part of the Guaranteed Obligations, or against any one or more of them, separately or together, without impairing the rights of Lender against Guarantor.  Any time that Lender is entitled to exercise its rights or remedies hereunder, Lender may in its sole discretion elect to demand payment and/or performance. If Lender elects to demand performance, then it shall at all times thereafter have the right to demand payment until all of the Guaranteed Obligations have been paid and performed in full, subject to the limitations in *Section 1 and Section 2*. If Lender elects to demand payment, then it shall at all times thereafter have the right to demand performance until all of the Guaranteed Obligations have been paid and performed in full, subject to the limitations in *Section 1 and Section 2*.

5.   **Other Guaranteed Obligations**. If any Guarantor becomes liable for any indebtedness owing by Borrowers to Lender by endorsement or other written agreement (if any), other than under this Guaranty Agreement, such liability shall not in any manner be impaired or affected hereby, and the rights and remedies hereunder shall be cumulative of any and all other rights and remedies that Lender may ever have against such Guarantor. The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy by Lender.

6. **Waiver of Subrogation**. Notwithstanding anything to the contrary contained herein, until the Guaranteed Obligations and any amounts payable under this Guaranty Agreement have been indefeasibly paid and performed in full and any commitments of Lender with respect to the Guaranteed Obligations are terminated, each Guarantor waives to the extent permitted by applicable law any right of subrogation, reimbursement, indemnification or contribution arising from the existence or performance (including payment) of this Guaranty Agreement or any of the Loan Documents. This waiver is given to induce Lender to make the Loan to Borrowers.

7. **Subordinated Debt**. All indebtedness, liabilities, and obligations of FCREI, Borrowers, any Affiliate of FCREI or any Borrower, or any other guarantor of the Loans to any Guarantor (the "*Subordinated Debt*") now or hereafter existing, due or to become due to any Guarantor, or held or to be held by any Guarantor, whether created directly or acquired by assignment or otherwise, and whether evidenced by written instrument or not, shall be expressly subordinated to the Guaranteed Obligations. Until such time as the Guaranteed Obligations are paid and performed in full and all commitments to lend under the Loan Documents have terminated, each Guarantor agrees not to receive or accept any payment from Borrowers with respect to any Subordinated Debt at any time an Event of Default exists immediately before or after giving effect thereto; and, in the event Guarantor receives any payment on the Subordinated Debt in violation of the foregoing, Guarantor will hold any such payment in trust for Lender and forthwith turn it over to Lender in the form received, to be applied to the Guaranteed Obligations, but without reducing or affecting in any manner the liability of the Guarantors under this Guaranty Agreement.

8. **Obligations Not to be Diminished**. Each Guarantor hereby agrees that its obligations under this Guaranty Agreement shall not be released, discharged, diminished, impaired, reduced, or affected for any reason or by the occurrence of any event, including, without limitation, one or more of the following events, whether or not with notice to or the consent of Guarantors: (a) the taking or accepting of collateral as security for any or all of the Guaranteed Obligations or the release, surrender, exchange, or subordination of any collateral now or hereafter securing any or all of the Guaranteed Obligations; (b) any partial release of the liability of Borrowers or the full or partial release of any other guarantor or obligor from liability for any or all of the Guaranteed Obligations; (c) any disability of Borrowers, or the dissolution, insolvency, or bankruptcy of Borrowers, any other guarantor, or any other party at any time liable for the payment of any or all of the Guaranteed Obligations; (d) any renewal, extension, modification, waiver, amendment, or rearrangement of any or all of the Guaranteed Obligations or any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Obligations; (e) any adjustment, indulgence, forbearance, waiver, or compromise that may be granted or given by Lender to Borrowers, any Guarantor, or any other party ever liable for any or all of the Guaranteed Obligations; (f) any neglect, delay, omission, failure, or refusal of Lender to take or prosecute any action for the collection of any of the Guaranteed Obligations or to foreclose or take or prosecute any action in connection with any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Obligations; (g) the unenforceability or invalidity of any or all of the Guaranteed Obligations or of any instrument, document, or agreement evidencing, securing, or otherwise relating to any or all of the Guaranteed Obligations; (h) any payment by Borrowers or any other party to Lender is held to constitute a preference under applicable bankruptcy or insolvency law

or if for any other reason Lender is required to refund any payment or pay the amount thereof to someone else; (i) the settlement or compromise of any of the Guaranteed Obligations; (j) the non-perfection of any security interest or Lien securing any or all of the Guaranteed Obligations; (k) any impairment of any collateral securing any or all of the Guaranteed Obligations; (l) the failure of Lender to sell any collateral securing any or all of the Guaranteed Obligations in a commercially reasonable manner or as otherwise required by law; (m) any change in the corporate, partnership, or limited liability company, as applicable, existence, structure, or ownership of Borrowers; or (n) any other circumstance (except payment in full of the Guaranteed Obligations or Guarantors have paid his maximum liability under *Section 1 or Section 2* above) which might otherwise constitute a defense available to, or discharge of, Borrowers or Guarantors.

        9.    **Waivers**. Each Guarantor waives for the benefit of Lender: (a) any right to revoke this Guaranty Agreement with respect to future indebtedness; (b) any right to require Lender to do any of the following before Guarantors are obligated to pay the Guaranteed Obligations or before Lender may proceed against Guarantors: (i) sue or exhaust remedies against Borrowers or any other guarantors or obligors; (ii) sue on an accrued right of action in respect of any of the Guaranteed Obligations or bring any other action, exercise any other right, or exhaust all other remedies or (iii) enforce rights against Borrowers' assets or any collateral pledged by Borrowers to secure the Guaranteed Obligations; (c) any right relating to the timing, manner, or conduct of Lender's enforcement of rights against Borrowers' assets or any collateral pledged by Borrowers to secure the Guaranteed Obligations; (d) if both Guarantors and Borrowers or any other Person have pledged assets to secure the Guaranteed Obligations, any right to require Lender to proceed first against any such other collateral before proceeding against any collateral pledged by any Guarantor; (e) except as expressly required hereby, promptness, diligence, notice of any default under the Guaranteed Obligations, notice of acceleration or intent to accelerate, demand for payment, notice of acceptance of this Guaranty Agreement, presentment, notice of protest, notice of dishonor, notice of the incurring by Borrowers of additional indebtedness, notice of any suit or other action by Lender against Borrowers or any other Person, any notice to any Person liable for the obligation which is the subject of the suit or action, and all other notices and demands with respect to the Guaranteed Obligations and this Guaranty Agreement; (f)(i) any principles or provisions of law, statutory, or otherwise, which are or might be in conflict with the terms hereof and any legal or equitable discharge of any Guarantor's obligations hereunder, (ii) the benefit of any statute of limitations affecting any Guarantor's liability hereunder or the enforcement hereof; and (iii) any requirement that Lender protect, secure, perfect or insure any security interest or Lien or any property subject thereto; and (g) each of the foregoing rights or defenses regardless whether they arise under (i) applicable statute or (iv) common law, in equity, under contract, by statute, or otherwise.

        10.    **Insolvency**. Should any Event of Default occur under Sections 10.1(e) or (f) of the Credit Agreement, then, in any such event, the Guaranteed Obligations shall be, as between Guarantors and Lender, a fully matured, due, and payable obligation of Guarantors to Lender (without regard to whether Borrowers is then in default under the Credit Agreement or whether the Obligations, or any part thereof is then due and owing by Borrowers to Lender), payable in full by Guarantors to Lender upon demand, which shall be the estimated amount owing in respect of the contingent claim created hereunder.

11. **Termination; Reinstatement**. Each Guarantor's obligations hereunder shall remain in full force and effect until all commitments to lend under the Loan Documents have terminated, and the Guaranteed Obligations have been paid and performed in full. If at any time any payment of the principal of or interest or any other amount payable by Borrowers under the Loan Documents is rescinded or must be otherwise restored or returned upon the insolvency, bankruptcy, or reorganization of Borrowers or otherwise, then Guarantors' obligations hereunder with respect to such payment shall be reinstated as though such payment had been due but not made at such time.

12. **Stay of Acceleration**. Should Borrowers voluntarily seek, consent to, or acquiesce in the benefit or benefits of any Debtor Relief Law, or become a party to (or be made the subject of) any proceeding provided for by any Debtor Relief Law (other than as a creditor or claimant), all Guaranteed Obligations shall nonetheless be payable by Guarantors immediately if requested by Lender.

13. **Representations and Warranties**. Each Guarantor represents and warrants that: (a) this Guaranty Agreement constitutes his legal, valid and binding obligation enforceable in accordance with its terms, except as limited by Debtor Relief Laws; (b) the making and performance of this Guaranty Agreement does not and will not violate the provisions of any applicable law, regulation or order, and does not and will not result in the breach of, or constitute a default or require any consent (that has not been obtained) under, any material agreement, instrument, or document to which such Guarantor is a party or by which he or any of his property may be bound or affected; (c) all consents, approvals, licenses and authorizations of, and filings and registrations with, any governmental authority required under applicable law and regulations for the making and performance of this Guaranty Agreement have been obtained or made and are in full force and effect; (d) by virtue of his relationship with Borrowers, the execution, delivery and performance of this Guaranty Agreement is for the direct benefit of each Guarantor and he has received adequate consideration for this Guaranty Agreement; and (e) each Guarantor has, independently and without reliance upon Lender and based upon such documents and information as such Guarantor has deemed appropriate, made his own analysis and decision to enter into this Guaranty Agreement, and each Guarantor has adequate means to obtain from Borrowers on a continuing basis information concerning the financial condition and assets of Borrowers, and no Guarantor is relying upon Lender to provide (and Lender shall have no duty to provide) any such information to such Guarantor either now or in the future.

14. **Covenants**. So long as this Guaranty Agreement remains in full force and effect, each Guarantor shall:

(a) Timely provide a personal financial statement on or before February 28 annually and the tax returns, including extensions, when filed;

(b) Furnish to Lender such additional financial information concerning Guarantor as Lender may reasonably request; and

(c) Obtain at any time and from time to time all authorizations, licenses, consents or approvals as shall now or hereafter be necessary or desirable under all applicable laws or regulations or otherwise in connection with the execution, delivery and

performance of this Guaranty Agreement and will promptly furnish copies thereof to Lender.

15. **No Fraudulent Transfer**. It is the intention of Guarantors and Lender that the amount of the Guaranteed Obligations guaranteed by Guarantors by this Guaranty Agreement shall be in, but not in excess of, the maximum amount permitted by fraudulent conveyance, fraudulent transfer, or similar laws applicable to any Guarantor (collectively, "*Fraudulent Transfer Laws*"). Accordingly, notwithstanding anything to the contrary contained in this Guaranty Agreement or any other agreement or instrument executed in connection with the payment of any of the Guaranteed Obligations, the amount of the Guaranteed Obligations guaranteed by Guarantors by this Guaranty Agreement shall be limited to that amount which after giving effect thereto would not (a) render any Guarantor insolvent, (b) result in the fair saleable value of the assets of any Guarantor being less than the amount required to pay its debts and other liabilities (including contingent liabilities) as they mature, or (c) leave any Guarantor with unreasonably small capital to carry out its business as now conducted and as proposed to be conducted, including its capital needs, as such concepts described in *clauses (a), (b)* and *(c)* of this *Section 15* are determined under applicable law, if the obligations of Guarantors hereunder would otherwise be set aside, terminated, annulled or avoided for such reason by a court of competent jurisdiction in a proceeding actually pending before such court. For purposes of this Guaranty Agreement, the term "*applicable law*" means as to each Guarantor each statute, law, ordinance, regulation, order, judgment, injunction or decree of the United States or any state or commonwealth, any municipality, any foreign country, or any territory, possession or governmental authority applicable to such Guarantor. Any analysis of the provisions of this Guaranty Agreement for purposes of Fraudulent Transfer Laws shall take into account the right of contribution against any Other Guarantor (as defined in *Section 25*) and, for purposes of such analysis, give effect to any discharge of intercompany debt as a result of any payment made under the Guaranty.

16. **Successors and Assigns**. This Guaranty Agreement is for the benefit of Lender and its successors and assigns, and, in the event of an assignment of the Guaranteed Obligations in accordance with the provisions of the Credit Agreement, or any part thereof, the rights and remedies hereunder, to the extent applicable to the indebtedness so assigned, may be transferred with such indebtedness. This Guaranty Agreement is binding on each Guarantor and its successors and permitted assigns; *provided that*, no Guarantor may assign its obligations under this Guaranty Agreement without obtaining the prior written consent of Lender, and any assignment purported to be made without the prior written consent of Lender shall be null and void.

17. **CREDIT AGREEMENT**. THE CREDIT AGREEMENT, AND ALL OF THE TERMS THEREOF, ARE INCORPORATED HEREIN BY REFERENCE, THE SAME AS IF STATED VERBATIM HEREIN, AND EACH GUARANTOR AGREES THAT LENDER MAY EXERCISE ANY AND ALL RIGHTS GRANTED TO IT UNDER THE CREDIT AGREEMENT AND THE OTHER LOAN DOCUMENTS WITHOUT AFFECTING THE VALIDITY OR ENFORCEABILITY OF THIS GUARANTY AGREEMENT.

18. **Setoff Rights**. Lender shall have the right, during the existence of any Event of Default (as defined in the Credit Agreement), to set off and apply against this Guaranty

Agreement or the Guaranteed Obligations or both, at any time and without notice to Guarantors, any and all deposits (general or special, time or demand, provisional or final) or other sums at any time credited by or owing from Lender to any Guarantor whether or not the Guaranteed Obligations are then due and irrespective of whether or not Lender shall have made any demand under this Guaranty Agreement.  As further security for this Guaranty Agreement and the Guaranteed Obligations, each Guarantor hereby grants Lender a security interest in all deposits (general or special, time or demand, provisional or final) other accounts of any Guarantor, money, instruments, and other property of any Guarantor now or hereafter on deposit with or held by Lender and all other sums at any time credited by or owing from Lender to any Guarantor.  The rights and remedies of Lender hereunder are in addition to other rights and remedies (including, without limitation, other rights of setoff) which Lender may have.

19. **Time of Essence**.  Time shall be of the essence in this Guaranty Agreement with respect to all of each Guarantor's obligations hereunder.

20. **GOVERNING LAW**.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ARKANSAS; *PROVIDED THAT* LENDER SHALL RETAIN ALL RIGHTS UNDER FEDERAL LAW.  THIS AGREEMENT HAS BEEN ENTERED INTO IN PULASKI COUNTY, ARKANSAS, AND IS PERFORMABLE FOR ALL PURPOSES IN PULASKI COUNTY, ARKANSAS.  ANY DISPUTE UNDER THIS GUARANTY AGREEMENT OR THE OTHER LOAN DOCUMENTS SHALL BE RESOLVED BY THE ARBITRATION PROCEDURES SET FORTH AT *SECTION 11.19* OF THE CREDIT AGREEMENT.

21. **Notices**.  Whenever any notice is required or permitted to be given under the terms of this Guaranty Agreement, the same shall, except as otherwise expressly provided for in this Guaranty Agreement, be given in writing, and sent by: (a) certified mail, return receipt requested, postage pre paid; (b) a national overnight delivery service; (c) hand delivery with written receipt acknowledged; or (d) facsimile, followed by a copy sent in accordance with *clause (b)* or *(c)* of this *Section 21* sent the same day as the facsimile, in each case to the address or facsimile number (together with a contemporaneous copy to each copied addressee), as applicable, in the case of Guarantors, set forth on the signature page to this Guaranty Agreement, and in the case of Lender, set forth in the Credit Agreement.  Lender and Borrowers shall not conduct communications contemplated by this Guaranty Agreement by electronic mail or other electronic means, except by facsimile transmission as expressly provided in this *Section 21*, and the use of the phrase "in writing" or the word "written" shall not be construed to include electronic communications except by facsimile transmissions as expressly provided in this *Section 21*.  Any notice required or given hereunder shall be deemed received the same Business Day if sent by hand delivery or facsimile, the next Business Day if sent by overnight courier, or three (3) Business Days after posting if sent by certified mail, return receipt requested; *provided that* any notice received after 5:00 p.m., Little Rock, Arkansas, time on any Business Day or received on any day that is not a Business Day shall be deemed to have been received on the following Business Day.

22. **Expenses**.  Each Guarantor hereby agrees to pay on demand: (a) all costs and expenses of Lender in connection with the preparation, negotiation, execution, and delivery of this Guaranty Agreement and the other Loan Documents and any and all amendments,

modifications, renewals, extensions, and supplements thereof and thereto, including, without limitation, the reasonable fees and expenses of legal counsel, advisors, consultants, and auditors for Lender, (b) all costs and expenses of Lender in connection with any Default and the enforcement of this Guaranty Agreement or any other Loan Document, including, without limitation, the fees and expenses of legal counsel, advisors, consultants, and auditors for Lender, (c) all transfer, stamp, documentary, or other similar taxes, assessments, or charges levied by any Governmental Authority in respect of this Guaranty Agreement or any of the other Loan Documents, (d) all costs, expenses, assessments, and other charges incurred in connection with any filing, registration, recording, or perfection of any Lien contemplated by this Guaranty Agreement or any other Loan Document, and (e) all other costs and expenses incurred by Lender in connection with this Guaranty Agreement or any other Loan Document, any litigation, dispute, suit, proceeding or action; the enforcement of its rights and remedies, and the protection of its interests in bankruptcy, insolvency or other legal proceedings, including, without limitation, all costs, expenses, and other charges (including Lender's internal charges) incurred in connection with evaluating, observing, collecting, examining, auditing, appraising, selling, liquidating, or otherwise disposing of the Collateral or other assets of Borrowers.

23. **Indemnification and Survival**. Without limitation on any other obligations of Guarantors or remedies of Lender under this Guaranty Agreement, each Guarantor shall, to the fullest extent permitted by law, indemnify, defend and save and hold harmless Lender from and against, and shall pay on demand, any and all damages, losses, liabilities and expenses (including attorneys' fees and expenses and the allocated cost and disbursements of Lender's internal legal counsel) that may be suffered or incurred by Lender in connection with or as a result of any failure of any Guaranteed Obligations to be the legal, valid and binding obligations of Borrowers enforceable (subject to equitable principles and the laws of bankruptcy, insolvency and the like) against Borrowers in accordance with their terms. The obligations of Guarantors under this paragraph shall survive the payment in full of the Guaranteed Obligations and termination of this Guaranty Agreement.

24. **Amendments; Counterparts**. This Guaranty Agreement may be amended only by an instrument in writing executed by Guarantors and Lender. This Guaranty Agreement may be executed in multiple counterparts, each of which, for all purposes, shall be deemed an original, and all of which taken together shall constitute but one and the same instrument. Legal delivery of this Guaranty Agreement may be made by, among other methods, telecopy or by email (.pdf or similar format).

25. **Contribution**. To the extent that any other Person guarantees the Guaranteed Indebtedness (each such Person is an "***Other Guarantor***"), and such Other Guarantor shall be required to pay any portion of any Guaranteed Indebtedness exceeding the *greater of* (a) the amount of the value actually received by such Other Guarantor and its Subsidiaries from the Loans and other Obligations and (b) the amount such Other Guarantor would otherwise have paid if such Other Guarantor had paid the aggregate amount of the Guaranteed Indebtedness (excluding the amount thereof repaid by Borrowers) in the same proportion as such Other Guarantor's net worth on the date enforcement is sought hereunder bears to the aggregate net worth of each Guarantor and all Other Guarantors on such date, then each Guarantor agrees to reimburse each such Other Guarantor for the amount of such excess, pro rata, based on the respective net worth of each such Other Guarantors on such date.

26.  **Gender**.  Whenever the context may require, the neutral gender as used in this Guaranty Agreement includes the masculine or feminine and vice-versa.

27.  **WAIVER OF JURY TRIAL**. TO THE EXTENT ALLOWED BY APPLICABLE LAW, GUARANTOR AND LENDER (BY ITS ACCEPTANCE OF THIS GUARANTY) EACH IRREVOCABLY WAIVES TRIAL BY JURY WITH RESPECT TO ANY ACTION, CLAIM, SUIT OR PROCEEDING ON, ARISING OUT OF OR RELATING TO THIS GUARANTY AGREEMENT OR ANY OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY LENDER IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF THIS GUARANTY AGREEMENT OR THE OTHER LOAN DOCUMENTS.

28.  **FINAL AGREEMENT**. THIS GUARANTY AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BETWEEN THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGES FOLLOW]

EXECUTED as of the first date herein set forth.

GUARANTOR:

*/s/ Suneet Singal*

_____

**SUNEET SINGAL**

Address of Guarantor: 512 Alta Vista
El Dorado Hills, CA 95762